FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MAR 1 9 2024

MITCHELL R. ELFERS
CLERK

Civil Action No. _____

(To be supplied by the court)

*Umari J. Clinton* , Plaintiff

**24 CV 267 MV/KRS**

v.

*Patrick Chentzler* ,

*Jenna Kruzka* ,

*Jill Brady* ,

*Darren Cantor* , Defendant(s).

**Jury Trial requested:**
(please check one)
✓ Yes _____ No

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

**PRISONER COMPLAINT**

---

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |
| **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

_Jabari J. Johnson, P.O. Box 777, Canon City, Co, 81215_
(Name, prisoner identification number, and complete mailing address)

_____
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____    Pretrial detainee
____    Civilly committed detainee
____    Immigration detainee
__✓__    Convicted and sentenced state prisoner
____    Convicted and sentenced federal prisoner
____    Other: *(Please explain)* _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    _Patrick Grentzler, Attorney, 619 Main St, Grand_
(Name, job title, and complete mailing address)

_Junction, Co, 81501_

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __✓__ Yes ___ No *(check one).* Briefly explain:

_Grentzler knowingly acted under the color of law_

_____

Defendant 1 is being sued in his/her __✓__ individual and/or ___ official capacity.

2

Defendant 2: _Jill Brady, 270 s. Tejon St, Colorado Spings, Co, 80903_
(Name, job title, and complete mailing address)

_, Judge_

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*).  Briefly explain:

_Brady Knowingly acted under the color of law_

Defendant 2 is being sued in his/her ___ individual and/or ___ official capacity.

Defendant 3: _Darren Cantor, ADC Director, 1300 Broadway, Denver,_
(Name, job title, and complete mailing address)

_Co, 80203_

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ___ Yes ___ No (*check one*).  Briefly explain:

_Cantor Knowingly acted under the color of law_

Defendant 3 is being sued in his/her ___ individual and/or ___ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

___ State/Local Official (42 U.S.C. § 1983)

___ Federal Official

As to the federal official, are you seeking:

___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

___ Other: (*please identify*) _____

On 3/13/23 filed (Motion Requesting Disqualification And Recusal Of Brady For Failing To Allow An Extension Of Time For Service Upon Adrian Garrett, Violating The Uniform Act C.R.S. 16-9-201 (Crim. P.21(6) Which Is An Abuse Of Descretion / Clearly Erroneous).stating:

Comes Now the Defendant requests disqualification of Judge Jill Brady for failing to certify the attendance of out-of-state witness Adrian Garrett. Initially Brady stated that Investigator Gillian Clark could not find her, yet my team did, and currently we need time to subpoena her, because the Judge will NOT follow The Uniform Act C.R.S 16-9-201 Compelling The Attendance of Out of State Witness.

see People v. McCabe, 37 Colo. APP. 181, 546 P.2d. 1289 (1975).

What makes matters worse is that the Judge granted an Evidentiary Hearing warranting it necessary for Adrian Garrett, claims of failure to interview witness to be accepted and heard at Evidentiary Hearing; now she's attempting to deny compelling the witness to attend nor certify her to be served nor is she giving Jabari Johnson and his team an extension to get the **funds** in order for travel and hotel expenses, so that we can serve Garrett ourselves since Brady doesn't want to do it pursuant to her obligations under the law.

When Claiming Failure To Interview Witnesses to succeed on a claim of failure to interview witnesses post conviction counsel must interview the witnesses that trial counsel failed to interview, and present their testimony in the postconviction proceedings to prove there is a reasonable probability that the outcome of trial would have been different if trial Court had interviewed the witness and presented their testimony at trial.

If the defendant is unable to subpoena Adrian Garrett then the defendant cannot win the claim at the evidentiary Hearing stage which is a Procedural due Process violation of the Defendants 14th Amendment Rights.

Judge Brady has abused her descretion and is clearly erroneous. This Judges action are grounds for recusal and disqualification.

see People v. Rodriguez 914 P.2d 230, *230, 1996 Colo. The disqualification of a Judge is governed by Colo. Rev. Stat. subsection 16-6-201 (1986) and Colo. R. Crim. P. 21(b)

Colo. Rev. stat subsection 16-6-201 provides in part (1) A Judge of a court of record shall be disqualified to hear or try a case if (D) He is in any way interested or prejudiced to the case, the parties, or counsel.

Colo. R. crim. P. 21(b) The purpose of the statute and rule for disqualification of a trial Judge is to guarentee that no person is forced to stand trial with a bent mind.

Brady is prejudiced and has been throughout this entire 35(c) for 4 years. She has a ton of evidence against her due to her bias and prejudiced nature such as her pecuniary interst in having the case result in a conviction rather than an acquittal.

see Tumey v. Ohio 273 U.S. 510 (1927) (Held lack of Judicial bias to be an essential of fundamental fairness and therefore over-turned a state conviction where trial Judge had a pecuniary interst in having the case result in a conviction rather than an acquittal).

Brady knows that in a 35(c) hearing witnesses are needed in order to win especially for failure to interview claims. Therefore due to her bias the defendant is requesting recusal.

see Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825, 106 S. Ct. 1580, 89 L.E. d.2d 823 (1986) Recusal is required when objective speaking the probability of actual bias on part of the Judge or decision maker is too high to be constitutionally tolerable).

Due to obvious bias and prejudice along with Crim. P. 21(b) and C.R.S. 16-6-201 this Judge has a duty to recuse/disqualify herself for failure of allowing the defendant to obtain his out of state witness, ~~both to his witness the~~ who was warrantes a hearing by the same Judge who won't certify the Uniform Act nor provide more time, so that Jabari's team may accumilate travel and Hotel funds in order to serve Adrian Garrett.

On 3/13/24 Jabari J. Johnson filed (Mohon No. 1 suing Brady or Her Clear Error/ Abuse of Descretion Removing Counsel Then Granting An Evidentiary Hearing Regarding the Same Witnesses The Defendant Indicated To The Judge At Conflict Hearing And In Motions That counsel Would Not Interview And Failed To Which Ultimately Is legal Malpractice). stated.

Pursuant to the Colorado Post Conviction Practice and Procedure To Succeed on a claim of failure to interview witnesses, post conviction counsel, must interview witnesses that trial counsel failed to interview, and present their testimony in postconviction Proceedings to prove that there is a reasonable Probability that the outcome of trial would have been different if trial counsel had interviewed the witnesses and Presented their testimony at trial.

On 6/30/23 an Evidentiary hearing was granted for 1) Whether counsel was ineffective for not interviewing Adrienne Garrett, Sara Bennett and Willis Earl Jenkins Jr.

Both Witnesses are material Sarah Bennett and Adrian Garrett (Patrick Crentzler/ Jenna Kruszka) did not attempt to find them to investigate as Jabari Johnson instructed is the evidentiary hearing is ironically about what Patrick/Jenna was supposed to do that the trial attorney didn't, however they did not investigate just like the trial attorney.

I am pro se due to conflict with Patrick. I am Pro-se due to Jenna's ineffectiveness. I told Judge Brady that Jenna refused to meet or contact witnesses, Both Patrick and Jenna did not interview or find witnesses. I was then granted an evidentiary hearing for the same witnesses they didn't interview or find in which I asked them to do and were supposed to Pursuant To The Colorado Post Conviction Practice And Procedure.

Such actions are without a doubt ineffective assistance of counsel. A lawyer has a duty to interview witnesses see People v. Rodriguez 421 914 P. 2d 230, 295 (Colo 1996) (failure to investigate may be grounds for asserting ineffective assistance of counsel.

If I lose my evidentiary hearing that is complete damage to my case and malpractice to my case 15CR2337 in which the evidentiary hearing is 4/26/24 at 9:00a.m. Proving that the Judge unlawfully took counsel Jenna Kruszka without providing another attorney as ADC Darren Cantor should have overruled the decision because his attorney was ineffective for not interviewing witnesses Adrian Garrett and Sarah Bennett. Brady committed a Clear Error and Abused her discretion for removing attorney forcing Defendant to be Pro-se when both attorneys were obviously ineffective.

1. Due Process Clause
2. Liberty Clause
3. Equal Protection Clause
4. priveleges And Immunities Clause

2/13/24

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

5million from each defendant
for both punitive and
compensatory damages

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

_____
(Date)

(Revised November 2022)

6

- Filed Document Title(s):

  - ORDER RE: DEFENDANTS PETITION FOR POST CONVICTION RELIEF PURSUANT TO CRIM. P. 35(c)
  - Submitted on Date/Time: Fri Jun 30 18:30:06 MDT 2023
  - Submitted by Authorizing Organization:
  - Submitted by Authorizing Attorney: El Paso County Court

If you have a question about the above listed case, please contact the court. Information for all Colorado court locations is listed on the Colorado Judical Branch website http://www.courts.state.co.us/Index.cfm.

| | |
|---|---|
| DISTRICT COURT, EL PASO COUNTY<br>STATE OF COLORADO<br>270 SOUTH TEJON STREET<br>COLORADO SPRINGS, CO 80903<br>719-452-5000 | DATE FILED: June 30, 2023 |
| **THE PEOPLE OF THE STATE OF COLORADO**<br><br>v.<br><br>**Defendant: JABARI JOSHUA JOHNSON** | Δ **COURT USE ONLY** Δ<br><br>Case Number: 2015CR2337<br><br>Division: 20 |
| **ORDER RE: DEFENDANT'S PETITION FOR POST CONVICTION RELIEF PURSUANT TO CRIM. P. 35(c)** | |

This matter comes before the court on Defendant Jabari Joshua Johnson's ("Defendant") Petition for Post Conviction Relief Pursuant to Crim. P. 35(c) (the "Petition") and responsive pleadings. As an initial matter, the court again apologizes to the parties for its delay in issuing this order. The court has been diligently reviewing this matter while also attending to trials, court hearings and other filings. Now having considered the pleadings, the file, applicable authority, the court grants, in part, and denies, in part, the Petition and orders that this matter be set for further proceedings.

## I.     Procedural History

On March 8, 2017, Defendant was found guilty by a jury of criminal attempt to commit aggravated robbery, burglary in the first degree, and menacing. The jury was hung as to the remaining counts. The charges stem from an altercation involving Defendant, Terrance Williams – the named victim in the case – and Elizabeth Mangum, during which both Defendant and Mr. Williams were shot.

1

Defendant was initially appointed an attorney from the Public Defender's Office, but due to a conflict of interest, Alternate Defense Counsel ("ADC") Andrew Bryant was appointed. On February 21, 2017, a conflict hearing was held regarding Mr. Bryant's representation of Defendant. The judge presiding over the hearing determined there was no conflict, and Mr. Bryant's representation of Defendant continued. After the jury was selected and the trial commenced, a second conflict hearing was conducted. No conflict was found. After the trial concluded, but before sentencing, a third conflict hearing was held. The court determined there was a conflict of interest, and new counsel was appointed for sentencing.

On August 28, 2017, Defendant was sentenced to fifteen years imprisonment in the Department of Corrections for first degree burglary, nine years imprisonment for attempted aggravated robbery, consecutive to the sentence for first degree burglary, and three years for felony menacing, concurrent to the other two counts.

## II.   Issues Presented

On March 6, 2020, Defendant filed his initial *pro se* Petition. In it, Defendant's central complaints relate to trial counsel's alleged failure to communicate with him and investigate certain aspects of the case. Defendant also takes issue with the court's first two findings that no conflict of interest existed between Defendant and Mr. Bryant. He argues Mr. Bryant always operated under a conflict of interest during his representation. In addition, Defendant asserts various, miscellaneous claims related to, among other things, his sentence and his counsel's pretrial filings.

On June 18, 2021, Defendant, with the assistance of court-appointed counsel, filed a Supplemental Petition, which incorporated the arguments made in Defendant's initial Petition, and raised two new claims for ineffective assistance of counsel, namely that trial counsel was

2306303028 0702 1-BB-1017 4

ineffective for not providing a cohesive theory of defense and for failing to argue for a mistrial on a proper basis. Court-appointed counsel also expanded on Defendant's argument that Mr. Bryant failed to investigate a potential witness, Adrienne Garrett, and the victim, Terrance Williams, before trial. Finally, the Supplemental Petition asserts newly discovered evidence as a basis for a new trial by way of an alleged conversation between Danielle Fouther and Elizabeth Mangum wherein Ms. Mangum expressed regret for lying and implicating Defendant in the shooting. Defendant asserts this conversation occurred before trial but was not revealed until sometime later. *Supplemental Petition*, p. 16.[1]

After his second court-appointed counsel withdrew, Defendant filed an Amended Supplemental Motion Pursuant to C.R. Crim. P. 35(c) on September 9, 2022. On November 4, 2022, the People filed a Response, arguing that each of Defendant's claims are either meritless or do not entitle him to relief, and asking the court to deny Defendant's Petition without a hearing. Defendant filed a *pro se* Reply on January 12, 2023. The court will address each of Defendant's claims.

### III.    Applicable Law

Notwithstanding the fact that . . . a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make application for postconviction review upon the grounds hereinafter set forth. Such an application for postconviction review must, in good faith, allege one or more of the following grounds to justify a hearing thereon:

---

[1] Defendant raised a conflict of interest with his first 35(c) court-appointed counsel. After a hearing on December 20, 2021, the court found a conflict existed and terminated counsel's appointment. A new court-appointed attorney entered her appearance on January 6, 2022. Before this lawyer withdrew on July 14, 2022, Defendant raised conflict issues with her several times that he would later withdraw. The lawyer was permitted to withdraw after a hearing on July 14, 2022. The court denied Defendant's request for further court-ordered representation due, in part, to his mistreatment of his second court-appointed lawyer. Defendant has represented himself since then.

3

(I) That the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state;

. . .

(V) That there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned by the defendant or his attorney prior to the submission of the issues to the court or jury, and which requires vacation fo the conviction ro sentence in the interest of justice;

(VI) Any grounds . . . properly the basis for collateral attack upon a criminal judgment.

Crim. P. 35(c)(2).

A criminal defendant is constitutionally entitled to effective assistance from his counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ardolino v. People,* 69 P.3d 73, 76 (Colo. 2003); *Davis v. People,* 871 P.2d 769 (Colo. 1994). Because the purpose of the requirement of effective assistance is to ensure a fair trial, however, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S at 687; *Ardolino,* 69 P.3d at 76. To prevail in a proceeding for post-conviction relief based on a claim of ineffective assistance of counsel, the defendant must demonstrate not only that counsel's performance was deficient, but also that it prejudiced the defense. *People v. McDowell,* 219 P.3d 332, 339 (Colo. App. 2009); *People v. Zuniga,* 80 P.3d 965, 972–73 (Colo. App. 2003). Because a presumption of validity attaches to a judgment of conviction, the burden is on the defendant to prove both elements by a preponderance of the evidence. *People v. McDowell,* 219 P.3d 332, 339 (Colo. App. 2009); *People v. Naranjo,* 840 P.2d 319, 325 (Colo.1992).

4

The proper standard for attorney performance is that of reasonably effective assistance, and therefore the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687–88; *Ardolino,* 69 P.3d at 76. Prevailing norms of practice can serve as guides to determine reasonableness, but no more than guides, because of the variety of circumstances faced by defense counsel and the range of legitimate decisions regarding how best to represent a criminal defendant. *Strickland,* 466 U.S. at 688–89. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *Id.* at 690–91; *Ardolino,* 69 P.3d at 76. Because a challenged action might be considered sound trial strategy under the circumstances of a particular case, judicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 698; *Ardolino,* 69 P.3d at 76.

Actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice. *Strickland,* 466 U.S. at 693; *People v. McDowell*, 219 P.3d 332, 339 (Colo. App. 2009); *Ardolino,* 69 P.3d at 76. This test requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* In this context, a reasonable probability means a probability sufficient to undermine confidence in the outcome. *Id.* Claims that are bare and conclusory and lack factual support should also be denied without a hearing. *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005).

2306303028 0702 1-88-1017 7

## IV.    Analysis and Conclusions of Law

The Court has tried to examine each claim raised in Defendant's various 35(c) pleadings. However, many claims in Defendant's *pro se* filings are repetitive, and there are some that are just unclear. To the extent Defendant raises issues which are not addressed below, such claims are denied as vague and conclusory.

### a.    *Trial Counsel's Alleged Failure to Investigate*

Defendant asserts trial counsel failed to conduct an adequate investigation into the allegations against him. Most of these claims relate to Mr. Bryant's alleged failure to interview or investigate several critical witnesses who would have established that Ms. Mangum shot Mr. Williams and not Defendant. The court finds Defendant is entitled to a hearing on some, but not all, of these claims.

A "proper investigation is essential for adequate representation." *Hutchison v. People*, 742 P.2d 875, 881 (Colo. 1987). A defendant is entitled to pretrial investigation sufficient to reveal potential defenses and facts relevant to guilt or penalty. *People v. Pendleton*, 374 P.3d 509, 516 (Colo. App. 2015) (citing *Davis v. People*, 871 P.2d 769, 773 (Colo. 1994)). A competent investigation requires that a defense attorney develop facts favorable to the defense and scrutinize carefully the prosecution's case. In the absence of a legally competent investigation, "knowledgeable preparation for trial is impossible." *People v. White*, 514 P.2d 69, 71 (Colo. 1973). "Without knowledgeable trial preparation, defense counsel cannot reliably exercise legal judgement and, therefore, cannot render reasonably effective assistance to his client." *Id*. Yet, an attorney's decision not to pursue certain avenues of investigation and instead rely on other sources of information, if made in the exercise of reasonable professional judgment, does not amount to ineffective assistance. *Pendleton*, 374 P.3d at 516. Moreover, "[u]nless such

6

investigation would have discovered substantial evidence which, if introduced, might reasonably have led to a different result, counsel's deficiency, if such it be, was not prejudicial." *People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994).

The first witness Defendant argues Mr. Bryant should have interviewed is Adrienne Garrett, who (Defendant contends) would have said she had a Facetime call with Defendant just before the shooting and saw Ms. Mangum holding the firearm. Petition p. 16; Supplemental Petition ¶ 45. Defendant references a "video affidavit" from Ms. Garrett describing the conversation she had with Ms. Mangum. Mr. Bryant informed the court at a conflict hearing on March 1, 2017, that he did not interview Ms. Garrett because he did not believe she was an important witness. The court agreed the witness did not seem important at the time. The specific details about the timing, location and content of the alleged Facetime conversation between Ms. Garrett and the Defendant are unclear. As the importance of this evidence, specifically whether it supports Defendant's theory that Ms. Mangum shot Mr. Williams, may turn on those facts, the court finds Defendant is entitled to a hearing on whether Mr. Bryant should have interviewed Ms. Garrett before trial, and whether his failure to do so prejudiced Defendant.

Defendant next asserts Mr. Bryant should have interviewed Sarah Bennet, who allegedly sent Instagram direct messages "in which she said the only thing she said to the police is what Terrance Williams told her." Petition p. 27. Ms. Bennett testified at trial that Defendant confessed to shooting Mr. Williams. The referenced Instagram messages suggest Ms. Bennett may have lied and Mr. Bryant could have used those messages to impeach Ms. Bennett's trial testimony. As Defendant's theory of defense was that Ms. Mangum shot Mr. Williams, Defendant has alleged facts sufficient to warrant a hearing as to this claim.

2306303028 0702 1-88-1017 9

Defendant's next argument that Mr. Bryant should have interviewed Willis Earl Jenkins, Jr., whose relationship to this case is unclear, warrants a hearing. Defendant alleges Mr. Jenkins overheard a conversation between Mr. Williams and an unidentified woman wherein Mr. Williams stated he was embarrassed for trying to rob Ms. Mangum and that Ms. Mangum shot him. Amended Supplemental Petition, ¶¶ 96-99.

Defendant also maintains Mr. Bryant failed to properly investigate Mr. Williams. Had he done so, Defendant contends, he would have learned Mr. Williams allegedly attempted to rob and shoot one of the jurors, went by two street names, and had a reputation in Colorado Springs for committing robberies. Supplemental Petition ¶ 48. This claim fails for two reasons. First, Mr. Bryant did, in fact, investigate Mr. Williams because he argued that certain aspects of Mr. Williams's past behavior were relevant at trial, namely that he sold drugs and participated in a "street lifestyle." Mr. Bryant argued that, at a minimum, he be allowed to cross-examine Mr. Williams about a Facebook video containing some of this evidence. Tr., March 2, 2017, pp. 168-169. The court ruled counsel could question Mr. Williams about his use of a certain moniker or street name, but nothing else. Specifically, counsel could not impeach Mr. Williams with statements he made on the video that he had guns and dealt drugs because he admitted to such activity on direct examination.

Second, Defendant does not indicate *how* Mr. Bryant would have learned that Mr. Williams allegedly attempted to rob a juror in Defendant's future trial through reasonable and diligent investigation. Indeed, whether that juror was correct that it was Mr. Williams who tried to rob him has never even been established. Counsel cannot be unreasonable for failing to investigate something that may or may not have occurred or may or may not have been reported to the police. Moreover, Defendant does not explain how learning through proper investigation

8

2306303028 0702 1-88-1017 10

that the Defendant went by the name "T-Murda" would have affected the outcome of his trial, or what, specifically, Mr. Bryant should have done to learn Mr. Williams had a reputation in the community for committing robberies, specifically to whom he should have spoken, in what "community" Mr. Williams had this reputation, or who held that opinion. These claims are denied as vague and conclusory.

Finally, Defendant asserts Mr. Bryant failed to interview Morgan Crockett, who allegedly posted on Instagram she believed Ms. Mangum was guilty of shooting Mr. Williams. Petition, p. 64. As this claim is vague and conclusory as to this person's relation to the case, when she made this alleged post, or how she formed this opinion, the court cannot find Mr. Bryant was unreasonable in not interviewing her. Defendant's contention that someone named Klarissa Adams would have told Mr. Bryant she had known Defendant a long time and that he had no motive to rob Mr. Williams because he always had money is similarly vague and conclusory. Amended Supplemental Petition, ¶¶ 91. These two claims are denied.

There is one other claim Defendant raises related to trial counsel's alleged failure to investigate that does not merit a hearing. Defendant asserts Mr. Bryant was ineffective for failing to investigate and present video and audio evidence of Ms. Mangum stating she, and not Defendant, was the shooter. Petition pp. 55, 61. Defendant contends "[i]f such evidence have {sic} been obtained by Defendant or his attorney before or during trial, such evidence would have dramatically changed the outcome of trial." *Id.*, p. 33. This assertion is without merit because this evidence was, in fact, presented to the jury at trial by the prosecution. Records of pretrial proceedings reflect Defendant's counsel had the video before the trial began. Therefore, Defendant is not entitled to a hearing or further relief on this claim.

9

*b. Newly Discovered Evidence*

Pursuant to Crim. P. 35(c)(2)(V), a Defendant may be entitled to relief if "there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned by the defendant or his attorney prior to the submission of the issues to the court or jury." To prevail on a claim of newly discovered evidence, a defendant must show that (1) the evidence was discovered after trial; (2) the defendant and his counsel exercised diligence to discover all possible evidence favorable to the defendant prior to and during trial; (3) the newly discovered evidence is material to the issues involved, and not merely cumulative or impeaching; and (4) on retrial the newly discovered evidence would probably produce an acquittal. *People v. McNeely*, 222 P.3d 370, 376 (Colo. App. 2009).

Throughout his filings, Defendant refers to many of the factual allegations related to his "failure to investigate" claims as "newly discovered evidence." In arguing his attorney did not investigate certain people or facts, Defendant concedes such evidence was either known or could have been known by Defendant prior to the trial. His argument, in essence, is his attorney did not exercise due diligence to discover it. As these are more properly characterized as failure to investigate claims, they have been addressed in Section IV(a) of this order and will not be reevaluated here.

There are two "newly discovered evidence" claims that were not addressed elsewhere. First, Defendant identifies an alleged statement from an El Paso County Sheriff's Deputy that Defendant's convictions were "a conspiracy due to retaliation against [the Defendant]." This claim is vague and conclusory, and not supported by any additional facts or information. As such, Defendant is not entitled to a hearing or any further relief on this claim.

10

Defendant raises one potentially meritorious claim regarding newly discovered evidence that relates to an alleged conversation between Danielle Fouther and Elizabeth Mangum "just before trial." In his Amended Supplemental Petition, Defendant argues Ms. Mangum allegedly expressed remorse for lying and implicating Mr. Johnson in the shooting, and stated she lied because she was afraid. Defendant maintains he only learned of this conversation after trial, and there was no reason for him or his attorney to know about it earlier. If true, this alleged conversation may support the defense's theory that Ms. Mangum and not Defendant shot Mr. Williams, and that Ms. Mangum's testimony to the contrary was untrue. Defendant is entitled to a hearing on this claim.

### c. Failure to Present a Defense

While Defendant titles this section of his Supplemental Petition "Failure to Present a Defense," Supplemental Petition, p. 9, what Defendant really argues is that trial counsel was ineffective for failing to present a *cohesive* or *proper* theory of defense.

A failure by defense counsel to develop a defense constitutes ineffective assistance when the omissions result in the withdrawal of potentially meritorious defenses which cannot be explained on tactical grounds. *People v. Dillard*, 680 P.2d 243, 245-6 (Colo. App. 1984). Defense counsel has an obligation to put the prosecution's case to test. *United States v. Chronic*, 466 U.S. 648, 656 (1984). "Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659.

As to Defendant's characterization of trial counsel's "disjointed" theory of defense, Defendant states:

[15]. The Defense was somewhat disjointed in presentation. The initial focus during opening statement was based on Ms. Mangum. "Her money. Her idea. Her

11

2306303028 0702 1-88-1017 13

gun." Trial. Tr. Pg. 23, March 1, 2017. The focus during the rest of the opening statement appeared to be the inconsistent statements from Ms. Mangum and Mr. Williams. Id. at 23-24. The presentation throughout cross-examination was directed toward Ms. Mangum being the shooter of Mr. Williams.

[16]. Summation by the Defense was that Ms. Mangum shot Mr. Williams. The Defense Theory, although not specifically stated, was that Mr. Johnson was along for the ride more or less. The Defense did not focus on the theory that Mr. Williams planned to rob Ms. Mangum of $20,000.

Supplemental Pet., p. 6, ¶¶ 15 and 16. Defendant maintains a "proper" theory of defense "was handed to the Defense by Ms. Mangum's self-recorded video of what happened the night of the shooting" where she states Mr. Williams attempted to rob her of money, Defendant stepped in between Ms. Mangum and Mr. Williams, and Ms. Mangum shot Mr. Williams to defend herself and Defendant. Supplemental Petition, p. 10, ¶¶ 29, 30. Defendant further claims trial counsel was provided a video of Mr. Williams discussing shooting Crips, Bloods, and KKK members, and pictures of Mr. Williams holding firearms, that would have corroborated the "proper" theory of defense had it been admitted.

In his opening statement, Mr. Bryant told the jury it was Ms. Mangum's idea to contact Mr. Williams to arrange a drug deal; her money she brought to buy the drugs; and her gun that ultimately shot Mr. Williams and Defendant. Counsel informed the jury they would hear wildly differing stories from Mr. Williams and Ms. Mangum about what happened the night Mr. Williams and Defendant were shot. Mr. Bryant told the jurors that while Ms. Mangum once told law enforcement that Defendant shot Mr. Williams, "she's also said she's the one who shot him." Tr. March 1, 2017, p. 23-24. He explained,

> You'll hear about what she's saying now. Why she's coming forward now and saying that Terrance Williams had a gun himself. **Terrance Williams tried to rob her.** Because remember as Ms. Burney pointed out, she sent pictures of the money that she had to show that she was serious. She didn't tell Mr. Williams that

12

2306303028 0702 1-88-1017 14

there would be another person with her. Mr. Williams thought it was only Ms. Mangum that was coming down there and she was going to have the money.

Tr. March 1, 2017, p. 24 (emphasis added).

Ms. Mangum testified at trial that Defendant shot Mr. Williams. The jury was also shown a video Ms. Mangum made of herself before trial where she confessed to being the shooter. As well, Ms. Mangum testified about a "motion" she filed in her own related criminal case on February 2, 2017, recanting her original statement to law enforcement due to fear of the victim after he reportedly followed her around the courthouse and threatened her one day. Ms. Mangum was questioned about these matters on direct and cross-examination.

Defendant testified at trial for a brief time before absenting himself. In that time, he said he and Ms. Mangum traveled from Fort Collins to Colorado Springs so Ms. Mangum could work out the terms of the marijuana deal with Mr. Williams, and that Mr. Williams pulled a gun on him and Ms. Mangum when they entered the home that night. Defendant did not testify as to what happened next – how Mr. Williams was shot or who shot him – because he did not return the next day for trial, and the trial proceeded (and concluded) without him.

Trial counsel repeated the theme of "her plan, her money, her gun" in closing argument. Tr., March 8, 2017, p. 78. In an attack on Ms. Mangum's credibility, he highlighted the difference between Ms. Mangum's two stories, namely her initial account to law enforcement that Defendant shot Mr. Williams, and her later recantation and admission to being the shooter, which he called "the truth."

**Mr. Bryant:** And, then, let's talk about her testimony. Let's talk about what she filed on February 2nd where she says she wants to tell the truth about what happened. The truth, that video, **where she said Terrance had a gun. There was a struggle. Jabari got shot. I pulled out my gun, and I shot Terrance.**

13

Tr. March 8, 2017, page 80 (emphasis added).

> **Mr. Bryant:** In fact, Terrance said, I didn't know there was second person coming done {sic}. He is setting her up, ladies and gentlemen. He thinks he's got a little girl, a girl that he knows, a girl that he doesn't think is going to be a threat. She's going to bring me a lot of money and we're going to discuss a drug deal, and I can take it from her.

Tr. March 8, 2017, page 83.

> **Mr. Bryant:** Ladies and gentlemen, Jabari Johnson wasn't the one that shot Terrance Williams. Elizabeth Mangum did. They didn't try to rob him, and she said they got out of there. I ask that you find him not guilty.

*Id.*

Here, it cannot be said that trial counsel failed to develop a cohesive defense in this case. In fact, the very defense Defendant argues trial counsel should have presented to be effective is the defense he put forward: that Ms. Mangum was the shooter and not Defendant. The *theory* of that defense was also quite clear: Mr. Williams believed Ms. Mangum came to his house alone with a large sum of money; he intended to take that money from her and was surprised when she brought Defendant with her; he pulled out a gun, and he was shot by Ms. Mangum with the gun she owned and had brought with her that night. Defendant's claim that Mr. Bryant was ineffective for providing the wrong theory of defense is factually and legally without merit.

However, the court will grant Defendant a hearing on one narrow issue related to this claim, specifically that Mr. Bryant should have filed a pre-trial motion for reverse 404(b) evidence related to Mr. Williams's alleged criminal history and other nefarious activity to support his defense that Ms. Mangum shot Mr. Williams after he tried to rob her. While defense counsel attempted to produce a Facebook video of Mr. Williams discussing shooting people and dealing drugs, his theory of admissibility was limited to the impeachment of Mr. Williams. The

14

trial court ruled the evidence inadmissible for impeachment purposes because Mr. Williams admitted during direct examination to dealing drugs and having a firearm in the home the night he was shot. While the "reverse similar" evidence may not be admissible, Defendant is at least entitled to a hearing on whether Mr. Bryant's decision not to seek its admission fell below an objective standard of reasonableness.

### d. Conflict of Interest

Defendant additionally argues that trial counsel was ineffective because he was operating under an actual conflict of interest during trial. Petition p. 107; Supplemental Petition ¶¶ 58-64. The court does not agree.

For a defendant to demonstrate that he was deprived of the effective assistance of counsel as the result of an actual conflict of interest, he must show not only that his counsel labored under a conflict but also that counsel's representation was adversely affected by that conflict. *West v. People*, 341 P.3d 520, 530 (Colo. 2015). To prove an adverse effect, a defendant must (1) identify a plausible alternative defense strategy or tactic that counsel could have pursued, (2) show that the alternative strategy or tactic was objectively reasonable under the facts known to counsel at the time of the strategic decision, and (3) establish that counsel's failure to pursue that strategy or tactic was linked to the conflict. *Id.* at 533.

Defendant requested and was granted four conflict of interest hearings in this case. The first involved the Public Defender's Office and is not relevant to this Petition. The second, and the first with Mr. Bryant, was held a few weeks before trial in front of the Honorable David Shakes. Defendant argued Mr. Bryant did not return phone calls, would not meet with him when he (Defendant) had car trouble and could not drive from Denver to Colorado Springs, was rude and unprofessional, either directly or through staff, and discussed confidential information about

15

2306303028 0702 1-88-1017 17

Defendant's case with other people. After hearing from Defendant and Mr. Bryant the court found no conflict.

A third conflict hearing was held before the trial judge, the Honorable David Prince, on the second day of trial. The Defendant raised many of the same issues from the prior hearing, namely, that Mr. Bryant did not return phone calls, would not meet him somewhere when Defendant had car trouble, had a rude staff, and disclosed information about his case to others. Defendant raised one new issue: Mr. Bryant's failure to contact potential witness, Adrienne Garrett who "knew a lot." When asked what she knew, Defendant refused to answer. In response to the one new issue with Ms. Garrett, counsel explained he was not aware until now that Defendant wanted him to interview her, and Mr. Bryant had read the discovery and did not think she was of any real importance. Tr. March 2, 2017, p. 194.

The court determined there was no conflict, noting that "on the issues that have previously been addressed [at the second conflict hearing] the court concludes they were the law of the case and were resolved by an independent judge." *Id.* The court went on to find that even if they were not law of the case, Defendant's reasserted claims did not serve as the basis for concluding a conflict exists. As to the only new issue – the investigation of Ms. Garrett – the court found based on its "knowledge of the case at this stage of the trial, and what's described as her importance from Mr. Johnson, I can't see a reason that she needs to be interviewed for this case." *Id.* at 195.

The final conflict hearing occurred with the Honorable Michael McHenry after trial but before sentencing. At the outset, the court framed the scope of the hearing as follows:

> Part of what I'm trying to tell you is I'm not going to be allowed to review the decision made at either one of the previous two conflict hearings. So starting from the last time there was a conflict hearing, which I understand was Judge Prince, from      the      time      that      Judge      Prince      ruled      that

16

2306303028 0702 1-88-1017 18

there was no conflict between you and Mr. Bryant forward, anything that's happened in that span of time between you and Mr. Bryant or his investigator up until today, those -- that's the time period I am allowed to make a decision on.

…

I'll listen to everything from March 7th to today.

Tr. April 5, 2017, pages 11-12. Defendant then informed the court Mr. Bryant released confidential information to Defendant's uncle during trial and did not do a good job defending him at trial, because he did not, among other things, admit certain evidence or impeach witnesses.

In a discussion with Defendant and Mr. Bryant, the court informed Defendant that many of his complaints appeared more appropriate for a post-conviction motion based on ineffective assistance of counsel, and not a conflict hearing. The court then explained that if counsel conceded there was a justified breakdown in communication at that time, the court would appoint Defendant another attorney. After some back-and-forth between the court, Mr. Bryant, and Defendant, Mr. Bryant noted that if the Defendant was adamant that he did not want Mr. Bryant to represent him at sentencing he did not think he could stay on as counsel. Without addressing any of the Defendant's specific complaints, the court then found a conflict.

Defendant now argues that Judge McHenry's finding of a conflict after trial proves Mr. Bryant operated under an actual conflict during trial. Petition p. 107. But this argument is based on the faulty assumption that Judge McHenry got it right and Judge Prince and Judge Shakes got it wrong. Of relevance to the Petition, three conflict hearings were held at different times and before different judges. The determination of whether there was or was not a conflict was based on the information presented to the court at that time. Judge Prince and Judge McHenry only allowed the Defendant to raise new issues at their hearings, that is, concerns that

17

2306303028 0702 1-88-1017 19

had arisen since the last conflict hearing was held. While the Defendant struggled to stay within those parameters, the court did not. The ruling from each conflict hearing stands on its own. There was not a conflict regarding Mr. Bryant the first two times Defendant raised the issue, but there was the third time. As Defendant cannot establish Mr. Bryant operated under an actual conflict of interest during his entire representation of Defendant, he is not entitled to post-conviction relief on this basis.

*e. Failure to Assert Proper Basis for Mistrial*

Defendant's next claim alleging ineffective assistance of counsel relates to a revelation at the end of trial that a member of the jury believed he had been robbed by the victim in the case, Mr. Williams. Upon the juror's disclosure, the court excused him and determined the alternate juror would serve. Mr. Bryant moved for a mistrial, arguing the alternate juror had not been paying attention throughout the trial, and should not serve as the twelfth juror. The motion was denied.

Defendant now argues that Mr. Bryant should have requested a mistrial on the basis that the juror's statement about the robbery constituted new evidence that would entitle Defendant to a new trial. Supplemental Petition ¶¶ 65-68. Defendant contends Mr. Bryant should have asked for a mistrial to investigate the juror's claims and then used whatever he learned at Defendant's retrial. As Defendant cites no authority for the proposition that the basis upon which trial counsel requested a mistrial constituted ineffective assistance, rather than a strategic decision within the discretion of counsel, Defendant is not entitled to further relief on this claim.

18

*f. Miscellaneous*

Defendant raises several "miscellaneous" claims that do not fit squarely within the categories discussed above and will therefore be addressed here. None of these claims warrants a hearing or further relief.

Defendant argues Mr. Bryant was ineffective because he violated the Rules of Professional Conduct in two ways. First, by discussing Defendant's case with Defendant while other individuals were present, namely Danielle Fouther and Curtis Sampson. Petition p. 91, p. 99. Second, by not answering "the phones," returning Defendant's phone calls, failing to meet the Defendant when he was having car trouble, and telling Defendant to get a piece of video evidence himself, which Defendant believes should have been "heard or presented to the jury." Defendant has not shown that Mr. Bryant and his staff's alleged actions, even if true, prejudiced him with respect to the outcome of his case. This information would not have been presented to the jury because it is not relevant to whether Defendant committed a crime.

Defendant also claims trial counsel was ineffective for failing to request a continuance due to Ms. Mangum's self-recorded video, Petition, p. 17; object to a bullet produced during trial that allegedly had not previously been disclosed in discovery, *id.*; and file a trial management order or list of exhibits or witnesses, *id.*, p. 21. As to the first claim, Defendant does not say why a continuance was necessary under the circumstances, or how the failure to seek one prejudiced him. As to the second claim, he does not identify the bullet he is talking about or how he knows it was not in discovery. As for the trial management order, trial counsel filed a theory of defense and witness list on February 16, 2017. Defendant is not required to file exhibits before trial.

Defendant also appears to base his Petition to some degree on Mr. Bryant allegedly telling him the presiding judge would retaliate against him because he (the judge) did not "want

19

to see a Black man in numerous relationships with white women" if he were to admit certain, unidentified evidence. Petition, p. 30. The court does not understand this claim and denies it as vague and conclusory.

Finally, Defendant argues his lawyer at sentencing, Phil Winegar, failed to make the proper argument that his sentences should run concurrently. Petition, p. 46. At sentencing, the parties disagreed as to whether the court was required to impose consecutive sentences for Defendant's first-degree burglary and attempted aggravated robbery convictions, both of which were proven to be crimes of violence, or whether they could be run concurrently. This dispute turned on whether the court applied the version of C.R.S. §18-1.3-406(1)(a) that existed at the time of offense or the time of sentencing. The court properly concluded the revisions to the statute in July of 2016, which granted the court discretion to impose consecutive or concurrent sentences where a defendant is convicted of two or more crimes of violence arising out of the same incident and one of the crimes is aggravated robbery, applied to offenses committed on or after the statute's effective date of July 1, 2016. As the crime at issue was committed in 2015, the court was required to impose consecutive sentences for the two crime of violence convictions.

### g. Cumulative Error

"Even though [a court] has concluded the individual allegations do not require reversal, numerous formal irregularities, each of which in itself might be deemed harmless, may in the aggregate show the absence of a fair trial, in which event a reversal is required." *People v. Roy*, 723 P.2d 1345, 1349 (Colo. 1986). However, where a Defendant has failed to prevail on merits of most of his ineffective assistance of counsel claims, "there are not multiple errors to

2306303028 0702 1-88-1017 22

compound [and] defendant can be awarded no relief on the basis of cumulative error." *People v. Walton*, 167 P.3d 163, 169 (Colo. App. 2007) citing *Roy, supra*.

Because the court has granted a hearing regarding some of Defendant's allegations of ineffective assistance of trial counsel, the court will reserve ruling on cumulative error until those issues have been resolved.

V.    <strong>Conclusion</strong>

For the reasons stated above, Defendant's Request for Hearing Contained in His Motion for Relief Pursuant to Crim. P. 35(c) is GRANTED IN PART as described above.   The court will schedule this matter for a one-hour hearing on the following claims:

1) Whether counsel was ineffective for not interviewing or investigating Adrienne Garrett, Sara Bennett, and Willis Earl Jenkins, Jr.;

2) The alleged newly discovered evidence of the alleged conversation between Elizabeth Mangum and Danielle Fouther; and

3) Whether counsel was ineffective for not seeking the admission of certain prior acts of the victim, Mr. Williams, as "reverse similar" evidence.

The People shall prepare a writ for the Defendant's in-person appearance once the hearing is scheduled.

Done this 30th day of June, 2023.                    BY THE COURT:

*Jill M. Brady*
_____

Jill M. Brady
District Court Judge

21

Colorado Department of Corrections

Name: Vutvar J Valtruca

Register Number: (176.01

Unit: EG-1-LL

Box Number: 777

City, State, Zip: Canon City, Co 8122 K

**RECEIVED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 19 2024

MITCHELL R. ELFERS
CLERK

Clerk of Court
333 Lomas Blvd, NW
Albuquerque, NM, 87102

